## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TERRAH A. DEWS,<br>  P.O. Box 1023<br>  Clinton, MD 20735,<br><br>  Plaintiff,<br><br>v.<br><br>ALEX AZAR,<br>  U.S. Secretary of Health and<br>  Human Services,<br>  200 Independence Avenue, S.W.<br>  Washington, D.C.  20201,<br><br>  Defendant. | Civil Action No. _____ |

## COMPLAINT
### (Employment Discrimination)

### Introduction

1.      Plaintiff Terrah A. Dews brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*, and 42 U.S.C. § 1981a (hereinafter "Title VII") and the Age Discrimination in Employment Act of 1963, as amended, 29 U.S.C. § 633a (hereinafter the "ADEA"), to remedy acts of discrimination in employment practices by the U.S. Department of Health and Human Services based on her race (Black), sex (female), and/or age (mid to late 40's).

### Jurisdiction

2.      This Court has jurisdiction over the subject matter over this civil action pursuant to 42 U.S.C. § 2000e-16(c) for the Title VII claims and pursuant to 29 U.S.C. § 216(b) for the ADEA claims.  Plaintiff has exhausted her available administrative remedies having received a final agency

decision on the administrative complaints she lodged with DHHS concerning the discrimination claims contained herein – Agency Complaint Nos. HHS-OS-0070-2017 and HHS-OS-0015-2018 – within 30 days of the filing of this Complaint, that is on October 9, 2018.

**Venue**

3.      Pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), venue is proper in this judicial district as plaintiff was employed by the U.S. Department of Health and Human Services in the District of Columbia, and this is where the acts of discrimination and retaliation complained of took place and where plaintiff's personnel records are maintained by defendant.

**Parties**

4.      Plaintiff Terrah A. Dews is a 48 year old female African American citizen of the United States and of the State of Maryland.  She was employed in the 0905 attorney series in Departmental Appeals Board, Office of the Secretary, U.S. Department of Health and Human Services from 2010 until she was terminated on November 14, 2017.

5.      Defendant Alex Azar, the Secretary of Health and Human Services, is the head of the U.S. Department of Human Services ("DHHS"), a department within the Executive Branch of the government of the United States that has employed more than 500 persons in each of the last 20 weeks.  He is here sued in his official capacity only.

**Statement of Facts**

6.      Plaintiff is an attorney, having graduated from the University of Baltimore Law School in 1998.  After doing contract work as a lawyer for the National Association of Securities Dealers, Ms. Dews was a judicial clerk for the Hon. Michelle D. Hotten, Circuit Court for Prince Georges

County, Maryland, from 2001-2002, and then spent some six years working as an attorney in the Office of the County Attorney for Prince Georges County, Maryland (2004-2010).

7. Plaintiff came to the Departmental Appeals Board (hereinafter "DAB") at DHHS as an Attorney Advisor, GS-0905-13, in January of 2010, never having previously work there or in the federal government as an attorney. Ms. Dews was promoted to a GS-14 level in February of 2011 and was named the Deputy Director of the Medicare Operations Division (hereinafter "MOD") at DAB at that GS-14 level. In July / August 2012 Ms. Dews was made the Acting Director of MOD, reporting directly to the DAB Chair Constance B. Tobias.

8. Ms. Dews was promoted to Supervisory Attorney Advisor, GS-0905-15, in DAB in December 2012, and was named the Director of MOD, a post she held until May 2015.

9. In her capacity as a Supervisory Attorney Advisor, whatever her specific position, Ms. Dews was at all times rated overall as "Achieved More than Expected" – a level 4 out of a possible 5 levels – in each of her annual performance periods.

10. Despite these high ratings, in May 2015, Ms. Tobias removed Ms. Dews from her position as Director of MOD and reassigned her to the position of Director of Tobacco Cases in the Civil Remedies Division (CRD), still within the DAB. Then, in September 2015, Ms. Tobias made her Special Assistant, Angela Roach Ms. Dews's supervisor, even though every other Supervisory Attorney Advisor in the DAB was supervised by Ms. Tobias as the DAB Chair, and Ms. Roach was only a GS-15 Supervisory Attorney Advisor, the same as Ms. Dews, had been with DAB for less than two months at the time, had never performed as an attorney, and had never supervised anyone previously while a federal employee.

11.     As the Director of Tobacco Cases, Ms. Dews supervised staff attorneys and paralegals who drafted decisions for Administrative Law Judges (ALJ's) relating to violations of tobacco regulations of the Food and Drug Administration (FDA). It was evident that Ms. Tobias placed Ms. Dews into this position with the hope that she would fail. Ms. Tobias informed Ms. Dews she would not get the assistance of a deputy, even though the other Directors in the DAB had deputies, her predecessor (and her successor) as Director of Tobacco Cases were provided with a deputy. In August 2015, Ms. Dews was advised that she would be required to draft decisions, though this was the job of the staff attorneys she supervised, and not part of her own job description. In December 2015, Ms. Dews was advised that she was not permitted to occupy the Director's office suite.

12.     Ms. Tobias also berated Ms. Dews during their weekly meetings. In February 2016, Angela Roach threatened Ms. Dews with a desk audit, and told her to go to on a detail to the FDA, although no such detail had been arranged. Ms. Dews was also instructed by Ms. Roach not to contact the contracting company which employed the paralegals who staffed the Tobacco Cases team. On February 5, 2016, Ms. Tobias told Ms. Dews that she needed to take a (non-existent) detail to the FDA. At that same time, Ms. Tobias threatened Ms. Dews, telling her that if she did not leave the DAB within a year, Ms. Tobias would "performance [Ms. Dews] out."

13.     Despite the perpetual harassment and threats from Ms. Tobias and her assistant Angela Roach, in March 2016, Ms. Roach issued Ms. Dews a positive rating for her performance in the Director of Tobacco Cases position – a level 4 out of 5 levels – for the 2015 performance cycle. In March 2016 the FDA workload returned to the DAB at the request of the FDA Commissioner, and on March 11, 2016, Ms. Tobias emailed the ALJ's who hear the Tobacco Cases stating that Ms. Dews would continue as the DAB's Director of Tobacco Cases, as the ALJ's had expressed great

satisfaction with the job she had done in that position. On March 14, 2016, Ms. Tobias gave Ms. Dews her performance plan for the 2016 performance year (January 1, 2016 through December 31, 2016) for the position of GS-0905-15 Director of Tobacco Cases. Then, in April 2016, Ms. Tobias called Ms. Dews to her office and stated that she (Tobias) "was going in a different direction" for the Director of Tobacco Cases position and that Ms. Dews should "kiss her feet that she had a job."

14.     On May 2, 2016, Ms. Tobias had Ms. Roach advertise the position of Director of Tobacco Cases position as vacant, even though Ms. Dews was then encumbering that very position. Ms. Tobias and Ms. Roach told Ms. Dews not to apply for this "vacant" position. As she had been performing this very job at an excellent level, Ms. Dews nonetheless did apply for the position. Ms. Tobias selected a less qualified male candidate who was under the age of 40 years instead, and told Ms. Dews she (Tobias) did not know why she (Ms. Dews) had applied for the position when she had been instructed not to do so.

15.     On May 20, 2016, Ms. Tobias told Ms. Dews that because was not selected for the Director of Tobacco Cases position, she needed to accept a voluntary downgrade to a GS-14, or else the agency would move to terminate her employment. There being no legitimate reason for doing so (her having just received a level 4 annual rating in that very position only two months prior), Ms. Dews did not succumb to this threat and declined to be voluntarily downgraded. On May 23, 2016, Ms. Tobias and Ms. Roach met with Ms. Dews and asked her if she was going to accept the downgrade to a GS-14 level. When Ms. Dews declined to downgrade, Ms. Tobias told her that she was going to MOD. After this meeting, Ms. Tobias called a meeting with the Tobacco Cases staff that Ms. Dews had been supervising and falsely told them that Ms. Dews had agreed to "step down" from the Director of Tobacco Cases position.

16.     Ms. Tobias then effected a bogus "reassignment" of Ms. Dews to a non-supervisory staff GS-15 Attorney Advisor position in MOD. Ms. Tobias never generated a notification of personnel action (SF-50) or a request for personnel action (SF-52) – or any formal paperwork whatsoever – in connection with this alleged "reassignment," and, indeed, no such position as a non-supervisory GS-15 Attorney Advisor position even existed within the DAB at that time. Ms. Dews was never provided with a position description for the position she was supposedly reassigned to, nor was her previous performance plan for the position of Director of Tobacco Cases ever closed out. Indeed, no official effective date of this alleged "reassignment" was ever recorded or communicated to Ms. Dews. On May 31, 2016, Ms. Tobias told Ms. Dews to go to work in an office in MOD and stated that she (Tobias) did not think Ms. Dews could satisfy the production requirement of the MOD staff attorney position, and sarcastically added "good luck."

17.     Ms. Tobias's intention with this illegal "reassignment" was to run Ms. Dews out of the agency. Her assignment in this position was to draft Medicare decisions for ALJ's, a function Ms. Dews had never had as part of her day-to-day duties. Ms. Tobias assigned her deputy, Leslie Sussan, to be Ms. Dews's supervisor, although Ms. Sussan did not work in MOD, and all of the other staff attorneys in MOD were supervised by the Director of that Division. Moreover, in June 2016, Ms. Tobias revoked Ms. Dews's parking privileges on the excuse that she was no longer a supervisor.

18.     In May 2016, Ms. Dews was denied the ability to telework on the stated basis that she was new to MOD, as she had not yet been assigned there for a year. However, at the same time, Ms. Dews was denied the standard case production waiver that is provided to all newly assigned MOD attorneys to allow time to learn the process of drafting decisions as well as the substantive law involved. Ms. Dews was denied this accommodation. Attorneys who are newly assigned to MOD

also given training and a mentor. However, Ms. Dews was denied all of these standard resources that are always provided to newly assigned MOD attorneys. Indeed, Ms. Dews was not permitted to ask anyone to review her work before it was submitted to the ALJ's, which is a standard practice in MOD. Ms. Dews was also physically isolated from the rest of the staff attorneys in MOD.

19.    On June 29, 2016, Ms. Sussan issued Ms. Dews a performance plan for a non-existent GS-15 non-supervisory Attorney Advisor position she had purportedly been reassigned to at the end of May 2016.   This performance plan was issued to Ms. Dews although she was still on the performance plan for the Director of Tobacco Cases position she had received for the 2016 rating year from Ms. Tobias on March 14, 2016.   In any case, the performance plan for the purported non-supervisory GS-15 attorney advisor position did not contain any production requirements for a GS-15 level staff attorney, although it recounted production requirements for staff attorneys at the GS-12 through GS-14 levels.   Contrary to agency rules, Ms. Tobias failed to give Ms. Dews any rating for the first part of the 2016 performance cycle, during which time she was certainly in the Director of Tobacco Cases position, and Ms. Sussan failed to provide Ms. Dews with a formal progress review for the period after June 29, 2016, although such a progress review is required by DHHS.

20.    On March 22, 2017, Ms. Sussan issued Ms. Dews an untimely performance rating under the non-supervisory GS-15 performance plan at level 2 – "partially achieved results" – for the 2016 performance cycle.  This rating was not a full annual review, but inappropriately only covered July to December of 2016, and Ms. Dews was never afforded a rating for the work she did in the first part of 2016 as Director of Tobacco Cases.  Ms. Sussan issued this appraisal although Ms. Dews was still under the never-closed-out 2016 performance plan for the Director of Tobacco Cases provide to by Ms. Tobias on March 14, 2016.  Moreover, Ms. Sussan never provided Ms. Dews with any written

formal progress review stating that her performance was below the fully successful level, as is required by regulations.

21.     At that same time, on March 22, 2017, Ms. Sussan placed Ms. Dews on a performance improvement plan ("PIP"), the sole basis of which was a claim that Ms. Dews had not met her production requirement during the 2016 performance cycle.  However, the performance plan Ms. Dews was purportedly on listed no production requirement whatsoever for a GS-15 employee, and, in any case, Ms. Dews was never "reassigned" to any such non-supervisory GS-15 attorney advisor position.

22.     On July 7, 2017, Ms. Sussan issued Ms. Dews a letter stating that she had failed the PIP.  Again, this was based only on the critical element of a production requirement, which was not applicable to a GS-15 employee under the performance plan Ms. Sussan had given her on July 29, 2016. On August 18, 2017, Ms. Sussan notified Ms. Dews that she was proposing her removal from the Attorney Advisor GS 0905/15 position and from the federal service.  Through counsel, Ms. Dews responded in writing to the Notice of Proposed Removal on September 22, 2017, and responded orally on September 27, 2017.  These responses were made to the designated deciding official, Ms. Tobias.  Despite repeated requests from Ms. Dews's counsel, Ms. Tobias refused to recuse herself as the deciding official.  Among the reasons for Ms. Dews's request for Ms. Tobias to recuse herself was her demonstrated antagonism toward Ms. Dews and the demonstrated more favorable treatment of employees outside of Ms. Dews's protected classes – including selecting less qualified candidates outside of Ms. Dews's protected classes for ALJ positions to which Ms. Dews had applied in May 2015 and September 2016 – that Ms. Tobias showed.

23.     Ms. Dews contacted an EEO counselor on August 18, 2017, and on or about October 3, 2017, Ms. Dews filed an EEO informal complaint naming Ms. Tobias, Ms. Roach, and Ms. Sussan as the responsible management officials.  As the claims were not resolved, Ms. Dews timely filed a formal complaints of discrimination – Agency Complaint Nos. HHS-OS-0070-2017 and HHS-OS-0015-2018.

24.     On November 14, 2017, Ms. Tobias issued a decision to remove Ms. Dews from her employment at the agency and from the federal service.  The decision to remove Ms. Dews was based solely on a production requirement, though such a critical element was inapplicable to her under the July 29, 2016 performance plan on which she was rated by Ms. Sussan.  DHHS formally removed her from her position of record – Supervisory Attorney Advisor, GS-0905-15 – through the issuance of a SF-50.

25.     Ms. Dews received the Final Agency Decision (FAD) on her EEO complaints on October 9, 2018.

### Statement of Claims

Claim I – Race and/or Sex Discrimination –

26.     By decisions, actions, and/or omissions as outlined herein above at paragraph numbers 10 through 25, defendant discriminated against plaintiff on account of her race (Black) and/or her sex (female) by creating a hostile environment for her and planning and executing her removal from her GS-15 position and from the federal service.

27.     As a result of the aforementioned unlawful discrimination in employment practices at DHHS, plaintiff has suffered and continues to suffer severe curtailment of her career opportunities, loss of pay, personal and professional humiliation, and emotional pain and suffering.

Claim 2 – Age Discrimination –

28.     By decisions, actions, and/ or omissions as outlined herein above at paragraph numbers 10 through 25, defendant discriminated against plaintiff on the basis of age in violation of the ADEA by creating a hostile environment for her and planning and executing her removal from her GS-15 position and from the federal service.

29.     Defendant's acts of age discrimination against plaintiff were willfully and intentional done.

30.     As a result of the aforementioned unlawful discrimination in employment practices at DHHS, plaintiff has suffered and continues to suffer severe curtailment of her career opportunities, and loss of pay.

## **Prayer for Relief**

WHEREFORE, plaintiff prays that this Court enter judgment in her favor and against defendant on all her Title VII claims and on all her ADEA claims and provide the following remedies:

(a)     Order defendant to reinstate plaintiff retroactively to November 14, 2017 to her GS-0905-15 position as a Supervisory Attorney Advisor; with adjustments for any and all statutory pay increases;

(b)     Order defendant to provide plaintiff with full back pay, with interest thereon, and other benefits of employment in keeping with her retroactive reinstatement to the GS-0905-15 position;

(c)     Order defendant to provide plaintiff with annual performance appraisals for 2016, and thereafter equal to a level 4;

(d)  Order defendant to correct its records, including plaintiff Official Personnel Folder ("OPF"), to show that plaintiff (i) was never "reassigned to a non-supervisory GS-0905-15 Attorney Advisor position and that she remained a GS-0905-15 Supervisory Attorney Advisor position throughout 2016 and 2017 and thereafter, (ii) was never terminated from her position at DHHS, (iii) was not rated anything but a level 4 for 2016 and thereafter, and (iv) received all the relief ordered by the Court in this case;

(e)  Order defendant to, upon plaintiff's reinstatement to a GS-0905-15 Supervisory Attorney Advisor position, place her in a job in which she is free from the discriminatory animus of Constance Tobias and her subordinates;

(f)  Order defendant to pay compensatory damages against defendant in the amount of $300,000, plus interest thereon, for each violation of her rights under Title VII;

(g)  Order defendant to pay liquidated damages to plaintiff equal to the amount of back pay provided to plaintiff as the violation of the ADEA was willful and intentional on defendant's part;

(h)  Enjoin defendant and DHHS management from discriminating and/or retaliating against plaintiff in the future;

(i)  Award plaintiff the costs of bringing and maintaining this action and the administrative charges that preceded it, including reasonable attorneys' fees, pursuant to 42 U.S.C. 2000e-5(k) and the ADEA, and order defendant to pay such awarded attorneys' fees and related costs; and

(j)  Award plaintiff such other and further relief as the interests of justice may require.

## Jury Demand

Plaintiff hereby requests a jury trial on all issues of fact and the measure of damages.

Respectfully submitted,

David H. Shapiro
D.C. Bar No. 961326
J. Cathryne Watson
D.C. Bar No. 1032640
SWICK & SHAPIRO, P.C.
1101 15th Street, N.W.
Suite 205
Washington, D.C. 20005
Tel. (202) 842-0300
Fax  (202) 842-1418
emails - dhshapiro@swickandshapiro.com
          jcwatson@swickandshapiro.com

Attorneys for Plaintiff