UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TERRAH A. DEWS**,<br><br>Plaintiff,<br><br>v.<br><br>**ALEX M. AZAR, II**, U.S. Secretary of Health and Human Services,<br><br>Defendant. | Civil Action No. 18-cv-02566 (TSC) |

### MEMORANDUM OPINION

Plaintiff Terrah Dews brings this employment discrimination action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a, against Defendant Secretary of Health and Human Services, Alex Azar, alleging wrongful termination and hostile workplace discrimination on the basis of her race, sex, or age. Compl., ECF No. 1. Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Def.'s Mot. for Summ. J., ECF No. 9.[1] For the reasons stated below, the court will GRANT the motion in part and DENY in part.

### I.     BACKGROUND

**A.  Plaintiff's Work History**

Plaintiff is a Black woman, born in 1970. EEO Formal Complaint, ECF No. 9-1 at 95. She was employed in the Department Appeals Board ("DAB"), Office of the Secretary ("OS"),

---

[1] Defendant did not file a motion to dismiss.

U.S. Department of Health and Human Services ("HHS") from 2010 until her termination on November 14, 2017. SF-50 Removal, ECF No. 10-11.

From December 2012 until May 2015, Plaintiff was Director of Medicare Operations Division (MOD) within DAB. Dews Aff. ¶ 3, ECF No. 10-1. During that time, she was supervised by Administrative Law Judge Constance Tobias, a Black woman born in 1958. Tobias Aff., ECF No. 9-1 at 17. As Plaintiff's direct supervisor, Tobias gave Plaintiff her annual performance rankings. In 2012, 2013, 2014, and 2015, Tobias ranked Plaintiff Level 4 out of 5, i.e., "Achieved More than Expected Results." Tobias Dep., ECF No. 10-5 at 50:1–51:22; 2014 HHS Employee Performance Plan, ECF No. 10-8 at 1; 2015 HHS Employee Performance Plan, ECF No. 10-9 at 1.

Plaintiff claims that despite the fact she had received high performance ratings for approximately three years, Tobias began taking discriminatory actions against her starting in April 2015, when Plaintiff applied for two vacant Administrative Appeals Judge (AAJ) positions within MOD. Tobias ultimately filled those positions with two women under forty.[2] Dews Aff. ¶ 2. In May 2015, Tobias reassigned Plaintiff to Director of Tobacco Cases within the Civil Remedies Division (CRD) of DAB, SF-50 Reassignment, ECF No. 10-21, replacing Plaintiff with an Asian woman under the age of forty. Dews Aff. ¶ 3; Report of Investigation, ECF No. 9-1 at 35. Plaintiff claims that this reassignment was "intended as a *de facto* demotion," Pl.'s Opp., ECF No. 10 at 4, and, in order to "set [Plaintiff] up to fail," Tobias refused to give her the assistance of a deputy or a paralegal. Pl.'s Opp. at 3–4; Dews Aff. ¶ 3.

Plaintiff further alleges that once she was reassigned as CRD Director, Tobias began "harassing and humiliating" her. Pl.'s Opp. at 4; Dews Aff. ¶¶ 4, 6. She claims that in a meeting

---

[2] The record does not indicate the women's race.

on June 24, 2015, Tobias made a series of comments demonstrating her discriminatory animus, stating that: (1) Plaintiff lacked "political savvy," (2) Plaintiff was behaving like a "teenage girl," (3) Plaintiff needed to put on her "woman panties," and (4) she was tired of hearing that "Black women don't support each other." Pl.'s Opp. at 4–5; Dews Aff. ¶ 4. Plaintiff also claims that approximately eight months later, on February 6, 2016, Tobias threatened to "performance her out" of federal employment if Plaintiff did not leave the office within a year. Pl.'s Opp. at 5; Dews Aff. ¶ 6.

Plaintiff alleges that in April 2016 Tobias notified her that she was "going in a different direction" for the CRD Director position. Dews Aff. ¶ 9. On May 2, 2016, Angela Roach, Tobias' special assistant, began advertising Plaintiff's CRD Director position as vacant, CRD Director Vacancy Email, ECF No. 10-3, and Tobias concedes that she told Plaintiff that she would not be selected. Tobias Dep. at 129:5–22. Ultimately, Plaintiff applied for but was not selected for the position. CRD Tobacco Cases Non-Selection Letter, ECF No. 10-6. Instead, Tobias selected a Black man, under age forty, who had not previously worked on Tobacco Cases. Pl.'s Opp. at 6; Dews Aff. ¶ 10; Report of Investigation at 40. Plaintiff alleges that on May 20, 2016, Tobias initiated a meeting with her, during which she told Plaintiff that she would need to accept a voluntary demotion to a GS-14 attorney position, or Tobias would terminate her. Pl.'s Opp. at 6; Dews Aff. ¶ 11. Plaintiff did not accept a demotion. *See* Removal SF-50 (indicating that Plaintiff was a GS-15 when she was terminated on November 14, 2017); Dews Aff. ¶ 13.

On May 31, 2016, Tobias reassigned Plaintiff to a non-supervisory Attorney Advisor position within MOD, Tobias Dep. at 138:10–139:22, but did not execute a Standard Form 50 for the reassignment, as would typically occur. Tobias Dep. at 139:1–140:22. In her new role, Plaintiff was supervised by Leslie Sussan. Dews Aff. ¶ 15–17. Sussan claims she developed an

HHS Employee Performance Plan ("PMAP") with Plaintiff between May and June 2016, pursuant to which Plaintiff agreed to "keep the productivity numbers at the GS-14 level," and that Plaintiff signed the PMAP on July 1, 2016. Sussan Aff., ECF No. 9-1 at 65–67. Plaintiff agrees that she was "placed [ ] on a performance plan for a GS15 attorney advisor," but maintains that it did not "include a case production requirement for a GS15 Attorney Advisor." Dews Aff. ¶ 15.

According to the PMAP, GS-14 level attorneys were required to issue thirty-five or more action documents per quarter to perform at a Level 3: Achieved Expected Results, in the Critical Element Production category. Sussan Aff. at 67. Defendant contends that although Plaintiff was a GS-15 level attorney, she had the same production requirements as a GS-14 level attorney. *Id*. Consequently, Plaintiff was required to issue at least seventy action documents during the July 1, 2016 through December 31, 2016 performance period, but only issued eight. *Id*. at 66–67. Plaintiff disputes that assertion, claiming that she did not have any production requirements because the GS-14 production requirements identified in the PMAP were inapplicable to her as a GS-15 attorney. Pl.'s Opp. at 8; Dews Aff. ¶ 17.

Sussan claims that because Plaintiff produced only eight action documents in the last six months of 2016, she received a "Level 1: Achieved Unsatisfactory Results" in the Critical Element Production category. *See* Sussan Aff. at 67 (discussing Plaintiff's production requirements); Dews Aff. ¶ 15, 17 (acknowledging that Sussan placed Plaintiff on a performance plan that covered July 1, 2016 through December 21, 2016). Consequently, on March 20, 2017, Sussan placed Plaintiff on a Performance Improvement Plan ("PIP") that required her to improve her performance by producing at least twenty-five action documents per quarter within ninety

days.  PIP Letter, ECF 10-14 at 1–2.  Failure to do so could result in her demotion or removal from federal service.  PIP Letter at 3.

On July 7, 2017, Sussan notified Plaintiff that she had failed to comply with the PIP, PIP Failure Letter, ECF No. 10-16, and on August 18, 2017, she told Plaintiff that she was being removed from federal service, Sussan Aff. at 70.  On November 15, 2017, Tobias issued the decision removing Plaintiff from federal service.  *See Id.* ("Judge Tobias [ ] was the deciding official");  Dews Reply Letter, ECF No. 9-1 at 73–74 (asking Tobias to recuse herself from Plaintiff's removal action).

Plaintiff filed her EEO complaint on December 5, 2017, alleging race, sex, and age-based harassment and termination, arising from her 2015 to 2017 employment.  EEO Formal Complaint at 94–98.  On October 4, 2018, HHS found that Plaintiff failed to prove that she was subjected to disparate treatment or harassment based on race, sex, or age.  Def.'s Statement of Material Facts ¶ 34, ECF No. 9; *see also* Pl.'s Statement of Facts, ECF No. 10-23 (not disputing date and disposition of HHS's EEO investigation).  Plaintiff filed this case on November 7, 2018.  Compl.

## II.   LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Under the ADEA, "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age" in executive agencies.  29 U.S.C. § 633a(a).  Similarly, Title VII makes it unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *id.* § 2000e-16(a) (stating that "[a]ll personnel actions affecting employees or applicants for employment" in the federal government "shall be made free from discrimination based on race, color, religion, sex, or national origin.").

To make out a claim under either the ADEA or Title VII, a plaintiff may offer direct or indirect evidence.  When there is indirect evidence of discrimination, the familiar *McDonnell Douglas* framework applies.  *See Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999) (applying *McDonnell Douglas* to Title VII and ADEA claims).  Under *McDonnell Douglas*, a plaintiff must make a prima facie showing of discrimination, and then the burden shifts to the defendant to offer "legitimate, non-discriminatory reason[s] for the challenged employment decision." *DeJesus v. WP Co. LLC*, 841 F.3d 527, 532 (D.C. Cir. 2016).  If the defendant does so, the burden then reverts to the plaintiff to prove that discrimination was the real reason for the adverse employment action.  *Id.* at 532–33.

A. **ADEA and Title VII Termination Claims**

Plaintiff alleges that she was terminated because of her race, age, or sex, Compl. at ¶ 1, 26, 28. Defendant has not contested or otherwise addressed Plaintiff's claim that she has made a prima facie showing for all three alleged bases of discrimination. Instead, Defendant contends that it terminated Plaintiff because she "simply[ ] would not perform her duties," as evidenced by the fact that she (1) received a Level 1 out of 5 in her 2016 performance appraisal, (2) completed only eight of the seventy required action documents during the applicable 2016 rating period, and (3) completed only eleven of twenty-five action documents during the subsequent PIP period. *See* Def.'s Mot. for Summ. J. at 19. Because Plaintiff has met her prima facie showing and Defendant has offered a legitimate reason, the question becomes whether Plaintiff has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee" on the basis of her race, age, or sex. *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

Plaintiff does not dispute that she failed to meet the PIP requirements. Instead, she argues that "glaring irregularities, inconsistencies, and violations of protocol" raise an inference that Defendant's proffered reasons for termination are pretextual. Pl.'s Opp. at 15–18. She claims her termination in 2017 was unlawful because of Tobias' offensive comments in May 2015, Tobias' threat in February 2016 to "performance [Plaintiff] out," and the fact that her reassignment was not properly processed in May 2016. Pl.'s Opp. at 16–19.

In support of her position, Plaintiff cites several cases finding that a departure from normal procedures can raise an inference that an employer's proffered reasons for an employment decision may be pretextual. Pl.'s Opp. at 15 (citing *Perry v. Shinseki*, 783 F. Supp. 2d 125, 138–39 (D.D.C. 2011); *Downing v. Tapella*, 729 F. Supp. 2d 88, 97–98 (D.D.C. 2010);

*Salazar v. Washington. Metro. Transit Auth.*, 401 F.3d 504, 509 (D.C. Cir. 2005)).  In *Salazar*, the Court found that "a jury could infer something 'fishy'" from a retaliation plaintiff's allegation that the target of his whistleblowing later selected plaintiff's interviewers for promotion, contrary to protocol.  401 F.3d at 509.  Failing "to provide a 'fairly administered selection process'" can support a Plaintiff's claims that Defendant's asserted reason was pretextual.  *Id*.

  Here, there is a genuine dispute as to what Plaintiff's performance requirements were while she was in the non-supervisor attorney advisor position under Sussan in 2016.  Defendant claims that Plaintiff was required to meet the production requirements of a GS-14 attorney, *see* Def.'s Mot. for Summ. J. at 19–20, and Plaintiff claims that the PMAP did not have an applicable production requirement for her as a GS-15 attorney, *see* Pl.'s Opp. at 9, 11.  Defendant's failure to execute a PMAP with performance requirements explicitly applicable to Plaintiff, subsequently placing Plaintiff on a PIP for not meeting requirements that were less than clear, and then terminating her based on a failure to meet those requirement could lead a fact finder to conclude that Defendant's asserted reasons for termination are pretextual.

  Moreover, this Circuit has held that an "isolated [discriminatory] remark unrelated to the relevant employment decision" is not categorically "immaterial."  *Morris v. McCarthy*, 825 F.3d 658, 670 (D.C. Cir. 2016).  And even "remarks made significantly before the relevant employment action" are "probative evidence of a supervisor's discriminatory attitude."  *Id*.  Plaintiff alleges—and Defendant does not refute—that Tobias remarked on June 24, 2015 that Plaintiff lacked "political savvy," that she was acting like a "teenage girl," that she needed to "put on her woman panties," and that she was tired of hearing "[B]lack women don't support each other."  Dews Aff. ¶ 4.  And although Sussan was responsible for recommending Plaintiff for removal on August 28, 2017, Tobias was the deciding official.  *See* Sussan Affidavit at 70;

Dews Reply Letter at 73–74.  Viewing the record in the light most favorable to Plaintiff, Tobias' offensive comments are "probative evidence" of her "discriminatory attitude" in deciding to terminate Plaintiff, *Morris*, 825 F.3d at 670, and a jury could determine that race, sex, or age discrimination was the actual reason for Plaintiff's removal.  Consequently, Defendant's motion for summary judgement on Plaintiff's Title VII and ADEA unlawful termination claims will be denied.

B. <u>**Title VII and ADEA Hostile Work Environment**</u>

To establish a prima facie hostile work environment claim, a plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of her protected status; and (4) the harassment unreasonably interfered with plaintiff's work performance, creating an intimidating, hostile, or offensive working environment.  *Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1122–23 (D.C. Cir. 2002).  A plaintiff must show that the "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation and citation omitted).  Ultimately, a court considers "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).

Plaintiff's allegations and the evidence in the record fall short of what is necessary to proceed to trial on a hostile work environment claim under Title VII or the ADEA.  Plaintiff alleges that Tobias (1) made several insulting and discriminatory comments at a single meeting on June 24, 2015—telling Plaintiff to "put on her woman panties," accusing her of having no

"political savvy," behaving like a "teenage girl," and complaining that "Black women don't support each other"—(2) threatened to "performance [her] out" some months later, (3) contrived a production requirement when Plaintiff was reassigned in May 2016, and (4) criticized Plaintiff's work.  Pl.'s Opp., ECF No. 10 at 4, 5, 14.

Even considering the record in the light most favorable to Plaintiff, these allegations are not sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment. Comments that Plaintiff found offensive, occurring in two conversations across a nearly one-year period, are insufficient.  *See Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 78–81 (D.D.C. 2007) (denying a plaintiff's hostile work environment claims because a few isolated incidents and disparate acts did not raise a cause of action under Title VII); *Barbour v. Browner*, 181 F.3d 1342, 1348 (D.C. Cir. 1999) (no jury could find hostile work environment based on two isolated incidents where plaintiff was mistreated even though "[t]hese episodes certainly reflect[ed] poorly upon the professionalism" of the defendant).  And the other conduct Plaintiff complains of—assigning productivity goals and critiquing Plaintiff's work product—amounts to no more than "ordinary tribulations of the workplace."  *Brooks v. Grundmann*, 748 F.3d 1273, 1277 (D.C. Cir. 2014) (holding that selective enforcement of a time and attendance policy, poor performance reviews, and outbursts a by supervisor that included yelling and throwing a book, did not constitute a hostile work environment).  Consequently, Defendant's motion for summary judgment as to the hostile work environment claims will be granted.

### III.   CONCLUSION

The court will therefore GRANT in part and DENY in part Defendant's Motion for Summary Judgment, ECF No. 9.

Date: November 28, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge